IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-00877-LTB-SKC

ORA THOMAS, individually, and as the next friend of ROBERT THOMAS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

**DISCOVERY ORDER RE: RELEASES FOR THIRD-PARTY MEDICAL PROVIDERS**

    This Discovery Order addresses the Parties' dispute over medical releases Defendant seeks to obtain the deceased's medical records from third-party medical providers. Defendant raised the issue in the Parties' proposed Scheduling Order [ECF. #13], stating that "[a]n initial discovery issue has arisen that will significantly affect the course of discovery in this case and where the parties would greatly benefit from early judicial resolution." The Court heard oral argument from counsel during the Scheduling Conference on June 5, 2019, and took the matter under advisement.

    The Court has considered the description of this discovery dispute contained in the Parties' proposed Scheduling Order [ECF. #13], the arguments of counsel during the Scheduling Conference, applicable case law, and the entire court file.

1

## A. FACTS RELEVANT TO THIS ORDER

On March 25, 2017, the deceased, Mr. Thomas, was an 80-year-old United States Army Veteran. That day, he experienced chest pain and presented to the Denver VA Medical Center ("VAMC") Emergency Department with a complaint of chest pain. He reported to the VAMC caregivers his history of taking Viagra on March 24, 2017. Plaintiff alleges that medical personnel provided Mr. Thomas with nitroglycerin, which was contraindicated within 24 hours of taking Viagra.

According to Plaintiff, VAMC did not have the appropriate services to care for Mr. Thomas, who was undergoing a myocardial infarction. As a result, Defendant transferred Mr. Thomas to the University of Colorado Hospital even though Rose Medical Center (which had the closest Percutaneous Coronary Intervention Center) was across the street. In the ambulance, Mr. Thomas underwent CPR, and was subsequently diverted to Rose Medical Center where efforts to save his life were continued. Mr. Thomas subsequently died. The cause of death was documented as myocardial infarction.

Plaintiff brings this action under the Federal Tort Claims Act (FTCA) alleging that VAMC was negligent in its care provided to Mr. Thomas. In relevant part, Plaintiff alleges Defendant: (a) failed to properly assess and treat him; (b) failed to obtain a reasonable history prior to administering nitroglycerin; (c) administered nitroglycerin, which was contraindicated based on Mr. Thomas' use of Viagra; (d) failed to perform a reasonable physical examination; (e) failed to order, perform, and obtain necessary and reasonable laboratory tests, including an INR or digoxin level, particularly given that Mr. Thomas was on warfarin and digoxin; and, (f) failed to provide reasonable care. Plaintiff alleges that

Mr. Thomas died as a direct and proximate result of Defendant's negligence. Defendant denies that it breached the applicable standard of care or otherwise caused Mr. Thomas' death.

Regarding Mr. Thomas' medical records in the custody of third-party providers, Defendant seeks a release (specific to the relevant providers) to obtain all records relevant to Plaintiff's claim, including records from the Denver Paramedics and Rose Hospital, who provided medical care and treatment to Mr. Thomas immediately prior to his death. Defendant also seeks records from the Office of the Medical Examiner for the City and County of Denver related to Mr. Thomas' death. However, Plaintiff has indicated that she will not provide a release for these medical records in the custody of third-parties.

Plaintiff claims that these records are protected by a patient-physician privilege under state law, and that producing them raises issues of the deceased's privacy. Regardless, Plaintiff is voluntarily producing these records and has agreed to use a privilege log for any records she concludes are not discoverable, relevant, or which are otherwise privileged or private. Plaintiff fears that allowing Defendant to obtain these records directly by way of releases would equate to a fishing expedition into the whole of the deceased's medical history.

Defendant's position is that federal common law, and not state law, determines what privileges apply in this FTCA case—there is no physician-patient privilege recognized by federal common law. Defendant further argues that it is insufficient to allow Plaintiff to serve as the gatekeeper over the deceased's medical records when Plaintiff has put the deceased's medical history at issue in this case.

## B. LEGAL PRINCIPLES

The scope of discovery in federal court is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, while the proportional needs of the case serve as guardrails for further reasonably tailoring the scope of discovery. *Id.* The Court may limit the scope of discovery to protect a party from undue burden or expense. Fed. R. Civ. P. 26(c)(1). In addition, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If the material sought is relevant and proportional to the needs of the case, it should generally be produced.

In this Court, when federal law applies, as it does regarding Plaintiff's FTCA claim, federal common law governs the existence of privilege. There is no physician-patient privilege recognized by federal common law. *Whalen v. Roe,* 429 U.S. 589, 602 n. 28 (1977). "Accordingly, the court's inquiry regarding the discoverability of plaintiff's general medical records is governed by relevancy standards contained in Fed. R. Civ. P. 26 and considerations of confidentiality," but not privilege. *LeFave v. Symbios, Inc.*, No. 99-Z-1217, 2000 WL 1644154, at *2 (D. Colo. Apr. 14, 2000).

## C. ANALYSIS AND FINDINGS

The deceased's medical records are relevant to these proceedings. Plaintiff alleges that Defendant's negligence caused Mr. Thomas' death, which was documented to result from a myocardial infarction. Defendant disputes that it caused Mr. Thomas' death. Thus, the cause of death is squarely at issue in this case. And Plaintiff has conceded the relevance of these medical records by ultimately producing them with Rule 26(a)(1) disclosures.

Turning to the issue of privilege, though his medical records are relevant, they may also be privileged.[1] But there is no physician-patient privilege recognized by federal common law. *Whalen*, 429 U.S. at 602 n.28 ("The physician-patient . . . privilege is unknown to the common law"); *Cutting v. United States, et al.*, No. 07-cv-02053-REB-MEH, 2008 WL 1775278 at *2 (D. Colo. Apr. 14, 2008) ("In this FTCA case, federal privilege law controls, and no physician-patient privilege exists under federal law.") Moreover, Plaintiff has waived any applicable privacy rights in those records by injecting Mr. Thomas' cause of death into this litigation. *See Windsor v. Aasen,* No. 09–cv-00947–REB–KMT, 2009 WL 5184170, at *1 (D. Colo. Dec. 18, 2009) ("[B]y filing this lawsuit, plaintiff has put his medical condition at issue, and thereby is deemed to have waived any claim of privilege that may exist in his medical records."). The Court previously ordered the Parties to submit a stipulated proposed protective order. Thus, any confidentiality or

---

[1] Defense counsel clarified at the Scheduling Conference that Defendant does not seek Mr. Thomas' mental health records. So, the Court does not consider the applicability of any psychotherapist-patient privilege.

privacy concerns over the contents of the medical records will be protected by the terms of that order, once entered.

The Court finds helpful Magistrate Judge Hegarty's reasoning in a similar scenario, wherein he explained:

> The undersigned takes a fairly broad view of relevance, consistent with the Federal Rules of Evidence, particularly when, as here, the Plaintiff seeks significant monetary damages. Further, as all parties note, there is no federal physician-patient privilege. Although some of the medical treatment that Plaintiff has received in recent years may have little or nothing to do with her current case, she certainly has suffered from medical conditions that may impact both her longevity and such intangibles as pain and suffering and enjoyment of life. It is not practical to rule on Plaintiff's Motion by engaging in an ailment-by-ailment analysis, particularly when many of the medical records likely contain information about multiple conditions that the Plaintiff has suffered. Therefore, the better practice is to require production of all medical records for a reasonable time period and police their dissemination through an appropriate protective order. … The Court does not believe that ordering Plaintiff's counsel to be the gatekeeper for such information is efficient, because it will only result in distrust and will multiply motions practice in this case.

*Hixson v. United States*, No. 09-CV-00495-MSK-MEH, 2009 WL 1976016, at *1–2 (D. Colo. July 8, 2009) (footnotes omitted), *order clarified*, No. 09-CV-00495-MSK-MEH, 2009 WL 2358923 (D. Colo. July 30, 2009); *see also Shurtleff v. Cinemark USA, Inc.*, No. 2:13-CV-483-TS-PMW, 2014 WL 559561, at *3 (D. Utah Feb. 13, 2014) ("In the court's view, Plaintiff should not be the gatekeeper for providing these records to Defendants. Defendants are entitled to obtain the records from the medical providers themselves."); *Kubie v. Target Corp.*, No. 09-cv-00669-ZLW-KMT, 2009 WL 5216943, at *4 (D. Colo. Dec. 30, 2009) ("Given the absolute relevance the court finds in the documents submitted for *in camera* review, the court is left with substantial doubt that Plaintiff's counsel should be the gatekeeper of medical information.")

6

Under Rule 1, the Court *and* the Parties have an affirmative obligation to administer the rules of civil procedure "to secure the just, speedy, and inexpensive determination of every action or proceeding." Fed. R. Civ. P. 1. In this Court's view, under the circumstances of this case, this Rule 1 obligation is best achieved by requiring Plaintiff to execute appropriate releases for these records. *See, e.g., Hixson,* 2009 WL 1976016, at *2 ("This is the most efficient manner in which to address the collection of medical records, and in a case such as the present, limiting costs and increasing efficiency should be paramount in every party's approach to litigation….")

### D.  CONCLUSION

IT IS ORDERED that Plaintiff shall execute appropriate releases to allow Defendant to obtain Mr. Thomas' medical records from applicable third-party medical providers for a reasonable and proportional time-period. Plaintiff shall sign and return the releases to Defendant by **no later than 10 days from the date of this order**.

It is FURTHER ORDERED that the parties shall confer over the Protective Order (previously ordered to be submitted by no later than June 19, 2019), and propose one that will address confidentiality or privacy issues (including social security number, date of birth, etc.) and govern the procedure for the Parties' handling of these records, as well as filing of these records under seal, as necessary.

DATED: June 7, 2019

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge